**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MELISSA "TOOLEY" POINTER, et al., | |
| Plaintiffs, | Case No. 25-cv-11534 |
| v. | Judge Mary M. Rowland |
| CITY OF MARSEILLES, ILLINOIS, et al., | |
| Defendants | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Melissa "Tooley" Pointer, Scott "Ford" Damjanovic, and Christopher McKinnon, are suing the City of Marseilles, Illinois ("the City"), Randolph Gordon (R. Gordon), in his individual capacity, and the remaining individuals in their individual and official capacities: Jim Hollenbeck, Bobby Kaminski, Lesley Hart, Michael Etscheid, Todd Gordon (T. Gordon), James Buckingham, and Donald Weiss.[1] [41] at 3-5. Defendant Randolph Gordon moved to dismiss [77] and the remaining Defendants moved to dismiss [63] for failure to state a claim. For the reasons stated herein, Defendants' Motions to Dismiss are granted.

## I. Background

The First Amended Complaint ("FAC") is a sprawling fifty-six (56) pages that attaches two hundred eighty-one (281) pages of exhibits. The Plaintiffs also include over four (4) hours of videos from City Council meetings for the Court to sift through.

[1] Plaintiffs filed the First Amended Complaint ("FAC") in February of 2026.

Plaintiffs assert fifteen claims against the nine named Defendants. All the separate claims are lodged against all the defendants. These include multiple claims under 42 U.S.C. § 1983, alongside claims under the Fair Housing Act 42 U.S.C. § 3617, the Illinois Open Meetings Act 5 ILCS 120/1, the Drivers' Privacy Protection Act (DPPA) 18 U.S.C. § 2721, the Illinois Freedom of Information Act (IFOIA) 5 ILCS 140/1, the Illinois Human Rights Act 775 ILCS 5/6-101, the Illinois Eavesdropping Act 720 ILCS 5/14-2, and claims of common law defamation and intentional infliction of emotional distress.

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citation omitted). The complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S 602, 678 (2009). The statement must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A court deciding a Rule 12(b)(6) motion must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). *Pro se* complaints are construed liberally and held to a less stringent

standard than lawyer-drafted pleadings. *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). Even so, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (citation omitted). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (citation omitted).

## III. Analysis

### A. The FAC fails to comply with Fed. R. Civ. P. 8(a).

Defendants have moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6). *See generally* [63]. Defendants argue that the entirety of the FAC should be dismissed for violations of Rule 8(a)(2) and 8(d)(1). [63] at 2, 3. Defendants explain that Plaintiffs "have filed nearly 300 pages of meeting minutes, photographs, and various communications, in addition to over four hours of video exhibits," and argue that as a result it is "frequently impossible" to follow the course of events Plaintiffs are alleging give rise to their harm. Plaintiffs respond that, as Defendants "identify the counts, summarize the allegations, and challenge several counts one by one," they have fair notice. [73] at 4. Plaintiffs assert they have told a "coherent story," which is what Rule 8 requires. *Id.* The Court agrees with Defendants.

Rule 8 of the Federal Rules of Civil Procedure sets the pleading requirements for a complaint. Plaintiffs must supply "a short and plain statement of the claim

showing that the pleader is entitled to relief," with allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1).

All would agree that *pro se* plaintiffs' allegations are given lenience and need not be artfully pled so long as they present a basic story that holds together, but if the complaint's lack of organization or coherence is too confusing to determine which facts allegedly constitute wrongful conduct, dismissal is appropriate. See e.g. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law."). While length alone is not sufficient to justify dismissal of a complaint, lack of organization and coherence justifies dismissal as an appropriate remedy. *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011) (finding the plaintiff's complaint was too verbose and convoluted to justify allowing it to proceed beyond screening even if it did present potentially meritorious claims buried as a needle amongst a haystack). District judges have "ample authority" to dismiss claims that are "frivolous or transparently defective" in the interest of judicial economy. *Hoskins v. Poelstra*, 320 F.3d 761 (7th Cir. 2003).

Plaintiffs' FAC takes the reader through two years of disputes between these plaintiffs and members of the City government of Marseilles, Illinois. The FAC makes allegations from three city council meetings and involves the City's plan or Constellation Energy's plan to purchase property and develop it. According to the Complaint, Plaintiff McKinnon questioned defendant Hollenbeck about a plan to

purchase property for an amount far greater than it was worth and the next day, McKinnon received an ordinance violation for having excessive weeds. [41] at par. 2. On another occasion, after McKinnon recorded a city council meeting and posted criticism about it on YouTube, he received a cease-and-desist letter. [41] at par. 4-5.

At some point, Plaintiffs and many others in their subdivision received letters from an unnamed attorney offering to purchase their home. [41] at par. 7-9. It is not clear if these incidents are related and, if so, how so.

The FAC then explains that there was a broken curb, sinking storm drain and flooding near Plaintiffs' property. Although Plaintiffs reported these problems to the City, they were not repaired. [41] at par. 7-8. Plaintiffs speculate this was "selective nonenforcement." Plaintiff Pointer had previously suffered a minor spinal injury when lifting a box. She later tripped on the broken (still unrepaired) curb, worsening her condition. The FAC recounts the Pointer then applied for was awarded disability benefits. *Id.* Again, it is not clear how these incidents are related and it is certainly not clear how these incidents are related to any one of the Defendants.

There was an incident at a September 2024 City Council meeting where Plaintiff Damjanovic was prevented from reading a confidential report regarding an HR matter that involved the defendant mayor. [41] at par. 18-20. In November 2024 Damjanovic was removed from a City Council meeting prior to the start of it. *Id.* at par. 28. A year later, in December of 2025, an unidentified speaker was not given extended time to speak at a City Council meeting. [41] at par. 21.

The FAC also alleges that Defendant Hollenbeck drove through the subdivision and made threatening statements about taking Plaintiff Pointer's home and this prevented her from speaking at City Council meetings. [41] at par. 33.

Plaintiffs filed FOIA requests and were denied certain documents. [41] at par. 24-26. The Plaintiffs have appealed the denial of FOIA requests to the Public Access Counselor and, as of the date of the FAC, not gotten a response. [41] at par. 26.

The FAC outlines meetings between the certain defendants and representatives from Constellation Energy. [41] at 34-46. Plaintiffs Pointer and Damjanovic sold their homes in March of 2025. [41] at par. 47. Pointer's water was shut off the day that she closed on the property—but earlier than it should have been shut off. [41] at par. 48. The FAC goes on for another several pages, totaling over 100 paragraphs, describing interactions between the parties.

It is impossible to determine which of these vignettes form the basis of legal causes of action. It is not adequate under Rule 8 to simply report everything that has happened over a period of time and require the defendants and the Court to determine what conduct forms the basis of a cause of action. The purpose of Rule 8(a) is to ensure that the Court and adverse parties need not make such determinations. See *U.S. ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.")

The exhibits to the FAC compound the problem. The several hundred pages of exhibits include numerous meeting minutes, text messages from unknown sources, medical records, news articles, Facebook posts, Facebook messages, call logs, property records, letters, invoices, photographs, real estate contracts, lists of homeowners, FOIA responses, investigative reports, a sexual harassment settlement agreement, screenshots of a YouTube channel, and over four hours of video recordings of City Council meetings. See [41] at [41-1]; [41-2]; [41-3]; [41-4]; [41-5]; [41-6]. While some of these exhibits may be relevant to a dispute between the parties, the volume of exhibits prevents this Court from determining which exhibits are relevant to Plaintiffs' claims. See *Davis v. Anderson*, 718 F. App'x 420, 422 (7th Cir. 2017) (explaining that *pro se* plaintiffs could "write a very straightforward complaint" containing their basic allegations to comply with Rule 8(a)). The FAC is dismissed for failure to comply with Rule 8(a). The Court also considers some of the specific claims.

The law requires that plaintiffs be given an opportunity to amend a complaint to correct errors if possible. *See* Fed. R. Civ. P. 15(a); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). There are several claims that, based on the face of the current complaint, Plaintiffs are unable to cure. The Court considers those claims below.

### B. Claims dismissed with prejudice

#### i. Count II: Fourteenth Amendment Due Process

In Count II Plaintiffs allege that their right to Due Process was violated when defendants spread "stigmatizing accusations" against them via public meetings and

social media, terminated Plaintiffs' utilities without authorization, forced Plaintiffs to sell their homes, raised false accusations in state court, and refused to document Plaintiffs' complaints. [41] at 30. This is essentially a stigma-plus theory under the due process clause. To state a stigma-plus claim, Plaintiffs must allege that "as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished." *Paul v. Davis*, 424 U.S. 693, 711, 96 S. Ct. 1155, 1165, 47 L. Ed. 2d 405 (1976).

Defendants argue that plaintiffs fail to identify specific stigmatizing statements. [63] at 6. In response, Plaintiffs stated that they have "easily" met the standard of alleging stigmatizing statements by a state actor, alongside the alteration of a "state-created right or status." [73] at 7. Plaintiffs assert they were excluded from public forums and that "demonstrably false complaints against Plaintiffs" were accepted by Defendants. *Id.* The Court agrees with Defendants that the FAC fails to identify *any* stigmatizing statement by any Defendant.

In addition, Plaintiffs must plausibly claim that some state-law protection or status has been revoked—meaning they lost some status previously protected by state law—as a result of the stigmatizing statements. *Paul*, 424 U.S. at 709–11. Plaintiffs fail to identify any facts supporting a causal connection between the unidentified stigmatizing statements and the alteration of the right or status they are claiming. Plaintiffs need to allege they lost something recognized by state law because of the stigmatizing statements made by a defendant. While here, two of the Plaintiffs apparently sold their homes, there is no indication they lost employment or

contracts or the like. See, e.g., *Brown v. City of Michigan City, Indiana*, 462 F.3d 720 (7th Cir. 2006) ("The defamatory statements must alter or extinguish a right or status previously recognized by state law.") (internal quotation and citation omitted). As Plaintiffs have failed to state a claim under the stigma-plus theory, Count II is dismissed with prejudice.

**ii. Count IV: Fair Housing Act**

Plaintiffs allege retaliation under the Fair Housing Act ("FHA") (42 U.S.C. § 3617) in the FAC. [41] at 33. Plaintiffs claim that they engaged in protected activity by occupying and enjoying their homes, resisting development activity, and by speaking at public meetings. *Id.* They allege that because of their actions, Defendant Hollenbeck intimidated them into selling their homes. *Id.* at 34. Defendants move to dismiss this claim, arguing that Plaintiffs do not allege "that they fall into a protected class of persons," and do not allege conduct "prohibited by the FHA." [63] at 8. In response, Plaintiffs state that it can be "plausibly inferred" that Plaintiff Pointer suffered a severe injury and resulted in her finding of disability by the Social Security Administration. [73] at 9.

The Fair Housing Act states that it is unlawful to:

> "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of [housing…based on race, color, religion, sex, familial status, national origin, and disability.]"

42 U.S.C. § 3617. To successfully allege a claim under §3617, a plaintiff must plausibly allege that they are (1) a protected individual under the FHA; (2) engaged

in exercising their fair housing rights; (3) defendants coerced, threatened, or otherwise interfered with the plaintiff on the basis of their protected class or activity; and (4) defendants were motivated by an intent to discriminate. *Hunter v. WPD Mgmt., LLC*, 476 F. Supp. 3d 731, 737 (N.D. Ill. 2020) (citing *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009)).

Plaintiffs cannot plausibly allege a Fair Housing Act violation in this case. The FAC does not identify a protected characteristic that would qualify Plaintiffs for the protection of the FHA, nor does it identify any discriminatory intent by Defendants. And although Plaintiffs assert that based on the "City's intense surveillance" and its refusal to repair the broken curb, "it is plausibly inferred that defendants were aware of [Pointer's] protected status," it is well known that a plaintiff cannot amend a complaint through a response brief. [73] at 9; *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Moreover, Pointer having qualified for disability benefits does not render her a disabled person for purposes of the Fair Housing Act.

Plaintiffs speculate that Defendant Hollenbeck had an unspoken intent to discriminate against them. But plaintiffs must do more than speculate, they must plausibly allege their claim. Plaintiffs' claims under the FHA (Count IV) are dismissed with prejudice.

**iii. Count V: Fourth Amendment**

Count V attempts to assert a Fourth Amendment claim. The Fourth Amendment prohibits the warrantless entry of a person's home to perform a search or seizure. However, it is equally clear that "[c]onsent negates any claim to an unreasonable search." *Allison v. City of Chicago,* 2026 U.S. Dist. LEXIS 27174, *10 (N.D. Ill. 2026) (citations omitted).

The FAC alleges that Defendants "caused or directed public works employees to unlawfully enter Plaintiff Pointer's home without a warrant, consent, or exigent circumstances," on March 11, 2026, to shut off utilities in connection with the sale of Plaintiff Pointer's property. [41] at ¶¶ 4, 5. However, Plaintiffs also admit in the FAC that: "[Plaintiff Pointer] had approved disconnection of utilities for March 10, 2025." [41] ¶ 82. As such, Plaintiff Pointer consented to city employees entering her home for purposes of shutting down her utilities. *Wonsey v. City of Chicago*, 940 F.3d 394, 399 (7th Cir. 2019), citing *United States v. Terry*, 915 F.3d 1141, 1445 (7th Cir. 2019) (finding that if a person provides consent to another to enter, that person assumes the risk that the third party might permit access to others.) The Fourth Amendment Claim (Count V) is dismissed with prejudice.

**iv. Count IX: Federal Wiretap Act**

Plaintiffs allege that Defendant Hollenbeck "intentionally intercepted and obtained Plaintiff Pointer's private wire communication with Commissioner Scheib without consent or lawful authority." [41] at 41. Plaintiff Pointer learned of the recording after receiving an email in a FOIA disclosure, which stated that Defendant Hollenbeck had proof of Commissioner Scheib speaking with Plaintiff Tooley. *Id.* at

18. "Neither Plaintiff Pointer nor Commissioner Scheib consented to the interception, recording, or dissemination of their private call." *Id.* Defendants' Motion to Dismiss argues that Plaintiffs allegations are "conclusory" and lack any alleged facts supporting their conclusion. [63] at 10.[2] Defendants further state that to the extent that Count IX attempts to state a claim against the City, it must be dismissed as municipalities are immune from claims under the Federal Wiretap Act. *Id.*

"In order to set forth a civil claim for illegal wiretapping, plaintiff must allege that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *3 (N.D. Ill. Feb. 21, 2025).

To the extent this claim is alleged against the City of Marseilles, it is dismissed with prejudice. Regarding the Federal Wiretap Act, the Seventh Circuit stated that as "the statute does not include a municipality within its definition of 'person' . . . the statutory language must be regarded as conclusive." *Abbott v. Vill. of Winthrop Harbor*, 205 F.3d 976, 980 (7th Cir. 2000). The Federal Wiretap Act describes a "person" as "employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock

[2] Defendants argue that this claim should be dismissed as Plaintiffs stated that the claim was pursuant to 18 U.S.C.2511—which has no private right of action—as opposed to 18 U.S.C. § 2520, which *does* create a private right of action. As Plaintiffs proceed *pro se*, the Court presumes they intended to bring this claim under 18 U.S.C. § 2520. *See Maddox v. Capitol Bankers Life Ins. Co.*, No. 94 C 5207, 1997 WL 47449, at *5 (N.D. Ill. Jan. 30, 1997) (presuming *pro se* plaintiff intended to plead a wiretapping violation under 18 U.S.C. § 2520 despite the complaint's identifying 18 U.S.C. § 2511).

company, trust, or corporation." 18 U.S.C. § 2510(6). The City of Marseilles cannot be sued under this statute and is dismissed with prejudice on Count IX.

### v. Claims against Defendant Randolph Gordon

Randolph Gordon ("R. Gordon") is identified as a private attorney who acted in concert with municipal officials, Hollenbeck and Hart. [41] at ¶12. It has long been established that neither "public nor private attorneys are state actors for purposes of liability under 42 U.S.C. § 1983." See e.g., *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (neither public defenders nor private attorneys are state actors under § 1983 when performing a lawyer's traditional functions). A private attorney does not become a state actor merely because he represents a municipality. *See Raines v. Indianapolis Pub. Schs.*, 52 F. App'x 828, 830 (7th Cir. 2002) (rejecting a claim that a private attorney was a state actor when her involvement was limited to writing a letter informing plaintiff that the school board had denied plaintiff's request for a continuance and a letter informing plaintiff that he had been fired); *Arnold v. Baldwin*, No. 24-CV-02020-JPG, 2026 WL 1745523, at *2 (S.D. Ill. June 17, 2026)(dismissing defendant Baldwin, counsel who represented the plaintiff, who Plaintiff claimed provided inadequate representations during attorney-client meetings and in open court, where "both functions [are] central to a lawyer's role. Thus, Baldwin is not a state actor under § 1983…").

Plaintiffs acknowledge this is the law but assert they are alleging that R. Gordon "acted jointly with municipal officials" to retaliate against Plaintiffs' first amendment protected activity. [74] at 1. It is true that "[a] private actor ... can have

acted under color of law if the plaintiff can establish that '(1) the private individual and a state official reached an understanding to deprive the plaintiff of her constitutional rights and (2) the private individual was a willful participant in joint activity with the state or its agents.'" *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006) (quoting *Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000)).

The problem for Plaintiffs is that they fail to adequately allege an agreement by R. Gordon or conduct that gives rise to an inference of an agreement. According to the Amended Complaint, R. Gordon sent a letter of cease-and-desist to Plaintiff McKinnon when he was litigating a state court case on behalf of clients. [41] at 27, 37. This is conduct at the core of an attorney who represents municipalities. There is nothing about this conduct that gives rise to a plausible inference that R. Gordon is part of a conspiracy with state actors. All counts against R. Gordon—specifically Counts I, III, and VI—are dismissed with prejudice with respect to R. Gordon. *See e.g.*, *Redwood v. Dobson*, 476 F.3d 462, 466–67 (7th Cir. 2007) (affirming the dismissal of a §1986 conspiracy claim against attorneys where there was no assertion that would allow reasonable jurors to conclude there was a conspiracy to take joint actions between a private attorney and a prosecutor, let alone proof that an unlawful objective was being pursued through unlawful acts).

**vi. Claims on behalf of unrepresented individuals**

A pro se litigant is not allowed to bring legal claims on behalf of another party. *In re IFC Credit Corp.*, 663 F.3d 315, 318–19 (7th Cir. 2011) ("individuals are

permitted to litigate *pro se*, though not to represent other litigants."); *Rhodes v. Jeffersonville Bldg. Comm'r*, No. 4:24-CV-00055-TWP-KMB, 2024 WL 2722878, at *2 (S.D. Ind. May 28, 2024) (as a "matter of law, non-attorneys may only represent their own interests in court pro se. … Only a licensed attorney may represent the interests of others. Because neither Plaintiff is a licensed attorney, they may not represent the interests of other beneficiaries *pro se,* …); *Hollis v. Truitt*, No. 22-CV-1171-DWD, 2022 WL 2703910, at *3 (S.D. Ill. July 12, 2022) (dismissing any claims pertaining to Plaintiff's wife, because "a *pro se* litigant is not allowed to bring legal claims on behalf of another party, so he cannot represent [his wife's] interests in this lawsuit.") (citations omitted).

It is not entirely clear whether the Plaintiffs, who are proceeding *pro se*, intend to bring a claim on behalf of Commissioner Michael Scheib. *See* [41] at ¶¶ 14, 57, 84, 85; *Id.* at ¶ 46. In Count XIII, Plaintiffs allege that Defendant Hollenbeck recorded a private conversation without Pointer's consent. *Id.* But there is no statement from Plaintiffs or Mr. Scheib—who is not a party to this case—detailing that Mr. Scheib did not consent to the interception or otherwise shared the contents of the call. *Id.* Any claim on behalf of Mr. Scheib is dismissed with prejudice. Plaintiffs, as *pro se* litigants, are permitted to represent only themselves, not any other unrepresented individual.

## IV. Conclusion

For the reasons stated herein, Defendants' Motions to Dismiss [63][68] are GRANTED. Other pending motions [20][59] are denied as moot. Plaintiffs' claims

under a stigma-plus theory (due process), the Fourth Amendment, and the Fair Housing Act are dismissed with prejudice. All claims against Defendant R. Gordon are dismissed with prejudice. Any claim against the City of Marseilles for violation of the Federal Wiretap Act is dismissed with prejudice.

Plaintiffs are granted leave to file an amended complaint **limited to the claims that have not been dismissed with prejudice and that strictly adheres to this order** by 1/8/27. If plaintiffs fail to strictly comply with this order or choose not to file an amended complaint by 1/8/27, the matter will be dismissed with prejudice.

E N T E R:

Dated: November 25, 2026

MARY M. ROWLAND
United States District Judge